[No. B265251. Second Dist., Div. Three. Apr. 14, 2017.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE RODRIGUEZ PAZ, Defendant and Appellant.

**COUNSEL**

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LAVIN, J.—**

## INTRODUCTION

Defendant Jose Rodriguez Paz was convicted of aggravated kidnapping, forcible rape, forcible sodomy, and related deadly weapon and one strike allegations after abducting H. Ramirez at knifepoint and assaulting her in an isolated parking lot.[1] On appeal, he contends: (1) there is insufficient evidence to support the sexual penetration element of sodomy; (2) trial counsel provided constitutionally deficient representation by failing to object to brief testimony about surveillance footage, failing to request an instruction about how to evaluate that testimony, and failing to object to the term *rape kit*; (3) the court had a sua sponte obligation to instruct the jury to abide by the interpreter's translation; (4) defendant's consecutive one strike sentences are unauthorized because no reasonable trier of fact could have concluded he had a sufficient opportunity to reflect during the attack; and (5) he must be resentenced because the court failed to state its reasons for imposing upper terms for two enhancements.

In the published portion of this opinion, we hold that the sexual penetration element of sodomy requires penetration past the buttocks and into the perianal area, but does not require penetration beyond the perianal folds or anal margin. We conclude the evidence before us is sufficient to establish that element. In the unpublished portion of the opinion, we reject defendant's remaining arguments, modify the judgment to clarify the statutory basis for defendant's sentence, and affirm as modified.

---

[1] Because the victim in this case has an unusual first name and a common last name, we refer to her by surname only. (See Cal. Rules of Court, rule 8.90(b)(4) [nondisclosure of identity]; U.S. Census Bureau, Frequently Occurring Surnames from the 2010 Census (Dec. 2016) file A <https://www.census.gov/topics/population/genealogy/data/2010_surnames.html> [as of Apr. 14, 2017] [Ramirez is 28th most common surname in the United States].)

## PROCEDURAL BACKGROUND

By amended information filed April 20, 2015, defendant was charged with aggravated kidnapping (Pen. Code, § 209, subd. (b)(1); count 2);[2] kidnapping (§ 207, subd. (a); count 3); forcible rape (§ 261, subd. (a)(2); count 4); and sodomy by force (§ 286, subd. (c)(2)(A); count 5).[3] As to counts 2 and 3, the information alleged that defendant personally used a knife (§ 12022, subd. (b)(1)). As to counts 4 and 5, the information alleged that defendant used a deadly weapon in the commission of a sex offense (§ 12022.3, subd. (a)); was armed with a deadly weapon in the commission of a sex offense (§ 12022.3, subd. (b)); kidnapped the victim within the meaning of the one strike law (§ 667.61, subds. (a), (d)(2) [movement substantially increased risk of harm], (e)(1) [simple kidnap]); and used a deadly weapon within the meaning of the one strike law (§ 667.61, subds. (a), (e)(3)). The information also alleged two prison priors (§ 667.5, subd. (b)). Defendant pled not guilty and denied the allegations.

After a bifurcated trial at which the victim testified with the assistance of a Spanish-language interpreter and defendant did not testify, the jury found defendant guilty of all counts and found the allegations true. Defendant admitted the prior convictions.

After a contested hearing, the court sentenced defendant to 70 years to life. The court selected count 4 (§ 261, subd. (a)(2); rape) as the base term and sentenced defendant to 35 years to life—a one strike term of 25 years to life (§ 667.61, subds. (a), (d)) plus the high term of 10 years for the deadly weapon enhancement (§ 12022.3, subd. (a) [personal use]). The court imposed an identical sentence for count 5 (§ 286, subd. (c)(2)(A)), to run consecutively. The court stayed count 2 (§ 209, subd. (b)(1)) and its related enhancement under section 654 and dismissed count 3 (§ 207, subd. (a)) because it was a lesser-included offense of count 2. The court struck the prison priors (§ 667.5, subd. (b)).

Defendant filed a timely notice of appeal.

## FACTUAL BACKGROUND

On August 16, 2012, sometime before sunrise, Ramirez left her home in Van Nuys and walked toward her bus stop on Van Nuys Boulevard. Suddenly,

---

[2] All undesignated statutory references are to the Penal Code.

[3] The original information, filed December 1, 2014, also charged defendant with attempted carjacking (§§ 664, 215, subd. (a); count 1) and alleged that he personally used a firearm in the commission of the offense (§ 12022.53, subd. (b)). That charge and enhancement were dismissed on December 30, 2014.

a man later identified as defendant grabbed her from behind and put her in a chokehold. He told her to walk. Ramirez struggled but was unable to get free. Defendant pushed her across the street; he remained behind her, with his arm around her neck. As Ramirez continued to struggle, defendant grabbed her hand and placed it on a knife he held to her back; he said he would stab her if she stopped walking. Defendant took Ramirez several blocks away to an alley adjacent to an apartment building on Victory Boulevard. They walked down the alley to a parking area in back. The parking area—essentially a large carport—was deserted.

Defendant directed Ramirez to the back corner between a wall and a parked car. He told her to undress. When she refused, defendant removed her pants and underwear. He repeatedly told Ramirez to lie down, but she refused. Defendant, who was standing behind her, touched "behind" Ramirez with his penis and "started having anal sex with [her]." The act caused her pain. She told defendant he was hurting her, but he did not stop. At some point, defendant pushed Ramirez to the ground and penetrated her vagina with his penis.

When Ramirez saw headlights from a car driving by, she told defendant the police were on their way. He stopped the assault and said, "Tell him I'm your boyfriend." Ramirez agreed. Then she got dressed and walked back to the street. Defendant caught up with Ramirez and demanded her phone, but she refused. She told defendant to leave, then crossed the street and tried to get help from a passerby. When the woman ignored her, Ramirez called her sister, who drove her to the police station.

At around 9:00 a.m., officers drove Ramirez in a police car as she directed them to the site of her abduction, along the path defendant forced her to walk, and to the parking lot where the attack occurred. Ramirez showed the officers the exact location of the assaults, and the officers secured the scene and dusted a nearby car for fingerprints; the prints were later matched to defendant.

At about 10:00 a.m., officers took Ramirez to a medical facility, where forensic nurse examiner Cynthia Urena examined her. Urena observed an abrasion on Ramirez's vaginal vestibule and a bruise to the hymen; both injuries were caused by force, pressure, and movement. Ramirez also had two lacerations in her perianal folds, both of which were caused by blunt force. Urena collected swabs from Ramirez's face, mouth, neck, vagina, cervix, perianal area, and rectum. DNA extracted from the semen found in Ramirez's vagina matched defendant's DNA.

## CONTENTIONS

Defendant contends there is insufficient evidence to support his sodomy conviction because the prosecution failed to establish the "element of anal penetration by a penis" beyond a reasonable doubt. He also argues he received ineffective assistance of trial counsel because counsel failed to object to testimony about out-of-court surveillance footage, failed to ask the court to instruct with CALCRIM No. 333 about lay opinion testimony, and failed to object to the prosecution's use of the term *rape kit*. Finally, he contends that the court had a sua sponte obligation to instruct the jury that it must abide by the interpreter's translation of Ramirez's testimony, and that his sentence is unauthorized because the court failed to state its reasons for imposing upper terms for two enhancements and lacked discretion to impose consecutive one strike terms.

## DISCUSSION

1. *There was sufficient evidence of penetration to support count 5.*

Defendant contends there is insufficient evidence of anal penetration to support his conviction for sodomy by force (§ 286, subd. (c)(2)(A); count 5). He argues Ramirez "never testified that [defendant] put his penis inside her anus or rectum," and though there was evidence of trauma to Ramirez's perianal area, there was no injury to the anus itself. The People argue Ramirez's testimony that defendant "started having anal sex with" her is sufficient to satisfy the disputed element. As a matter of first impression, we conclude penetration beyond the buttocks and into the perianal folds is sufficient to establish the requisite penetration—namely, sexual penetration of the anal opening. Taken together, Ramirez's testimony and the injuries to the perianal folds were sufficient to support the verdict.

### 1.1. *Elements of sodomy*

A criminal defendant may not be convicted of a crime unless the prosecution proves every fact necessary for conviction beyond a reasonable doubt. (U.S. Const., 5th & 14th Amends.; see Cal. Const., art. I, §§ 7, 15; *In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 90 S.Ct. 1068]; *Jackson v. Virginia* (1979) 443 U.S. 307, 316 [61 L.Ed.2d 560, 99 S.Ct. 2781].) This constitutional principle is so fundamental to our system of justice that criminal defendants are always "afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." (*United States v. Powell* (1984) 469 U.S. 57, 67 [83 L.Ed.2d 461, 105 S.Ct. 471].)

■ To convict a defendant of forcible sodomy (§ 286, subd. (c)(2)(A)), the People must prove:

—the defendant committed an act of sodomy with another person;

—the other person did not consent to the act; and

—the defendant accomplished the act by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the victim or another person.

(§ 286, subd. (c)(2)(A).) Sodomy, in turn, "is sexual conduct consisting of contact between the penis of one person and the anus of another person. Any *sexual penetration*, however slight, is sufficient to complete the crime of sodomy." (§ 286, subd. (a), italics added.) Before we can determine whether there is sufficient evidence of sexual penetration, however, we must define that term.

### 1.2. *Sexual penetration*

At common law, *any* act of sodomy was criminal. (4 Blackstone, Commentaries 215–216.) When California codified the common law, the new Penal Code contained the same blanket prohibition. Former section 286 provided, "Every person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment . . . ." (Former § 286, as enacted by Pen. Code of 1872.) The codifiers also enacted a companion statute, former section 287, which provided, "Any sexual penetration, however slight, is sufficient to complete the crime against nature." (Former § 287, as enacted by Pen. Code of 1872; see *People v. Martinez* (1986) 188 Cal.App.3d 19 [232 Cal.Rptr. 736] [discussing history of sodomy statute and penetration requirement].) In this regard, former section 287 mirrored former section 263, which provided that in cases of rape, "Any sexual penetration, however slight, is sufficient to complete the crime." (Former § 263, as enacted by Pen. Code of 1872.)[4]

The Legislature did not decriminalize sodomy until 1975, when it limited section 286 to three specified circumstances. (Stats. 1975, ch. 71, § 7, p. 133.)

---

[4] Some scholars have argued that the focus on penetration legally encodes a male perspective on women and links current sexual violations to historical concepts of male property. (See Langston, *No Penetration—And It's Still Rape* (1998) 26 Pepperdine L.Rev. 1, 3–4, 10, 13–15; see also MacKinnon, *Sex and Violence: A Perspective* in Feminism Unmodified (1987) pp. 85–92 [emphasis on penetration defines rape from a male sexual perspective].) Such concerns led some states to deemphasize or redefine the penetration requirement when they amended their rape statutes in the 1970s and 1980s. California was not one of those states. (See Shams, *Rape* (2002) 3 Geo. J. Gender & L. 609, 611–613.)

At the same time, it amended former section 287 to refer to "sodomy" rather than "the crime against nature." (Stats. 1975, ch. 71, § 9, p. 134.) Although former section 287 was subsequently consolidated into former section 286 (Stats. 1991, ch. 144, § 2, p. 1353), the Legislature has not made any other change to the text.

Despite these amendments, section 286 still does not define sexual penetration—but section 289 does. Section 289 provides: " 'Sexual penetration' is the act of causing the penetration, however slight, of the genital or *anal opening* of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1), italics added.)

Section 289, penetration by object, was enacted in 1978 to correct the disparate treatment accorded different forms of nonconsensual vaginal and anal penetration.[5] (Stats. 1978, ch. 1313, § 1, p. 4300; Health & Welf. Agency, Enrolled Bill Rep. on Sen. Bill No. 1640 (1977–1978 Reg. Sess.) Aug. 17, 1978, p. 1 (hereafter Enrolled Bill Rep.) ["The measure was introduced . . . to correct a deficiency in existing law."].) Until that point, a defendant who used his penis to penetrate a victim could be convicted of rape or sodomy—but a defendant who used an object to commit the same act could not. (*People v. Harrison* (1989) 48 Cal.3d 321, 327–328 [256 Cal.Rptr. 401, 768 P.2d 1078].)

Because section 289 was enacted to correct this problem—not to create a wholly novel offense—it shares "a very close relationship" with the rape and sodomy statutes. (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1369–1370 [108 Cal.Rptr.2d 235]; see Enrolled Bill Rep., *supra*, p. 1 [bill "was substantially amended during the course of hearings so that its language parallels existing forcible sodomy and oral copulation statutes. . . . Its main benefit is to make more specific the elements which constitute this offense, thus allowing for more effective prosecution."]; Assem. Com. on Criminal Justice Analysis of Sen. Bill. No. 1640 (1977–1978 Reg. Sess.) as amended Aug. 14, 1978, p. 2 ["The language of this bill currently parallels the language of the forcible sodomy and oral copulation statutes."].) In short, the Legislature did not intend to create a new standard; it simply made explicit what had

---

[5] Former section 287 provided an unusually detailed description of the prohibited conduct; most treatises tended to be more circumspect. Blackstone, for example, spent seven pages of his Commentaries discussing various aspects of rape, but limited his discussion of sodomy to Latin maxims. (See, e.g., 4 Blackstone, Commentaries 216 [" *'peccatum illud horribile, inter christianos non nominadum'* " (that horrible crime not to be named among Christians)].) Nor did judges think additional detail was necessary. (See, e.g., *People v. Williams* (1881) 59 Cal. 397, 398 ["Every person of ordinary intelligence understands what the crime against nature with a human being is."].)

theretofore been implicit.[6] (See *People v. Martinez, supra,* 188 Cal.App.3d at p. 25 [" 'when the Legislature enacts a law "framed in the identical language" of a previous law on the same subject, it is presumed that the new law has the same fundamental meaning as the old law.' [Citation.]"].)

As if to underscore that point, in 1986, the Legislature tried to bring additional consistency to the four "major sex offenses of rape, sodomy, oral copulation, and sexual penetration" by criminalizing the same conduct in each offense. (*People v. White* (2017) 2 Cal.5th 349, 358–359 [212 Cal.Rptr.3d 376, 386 P.3d 1172] (*White*); see *id.* at pp. 357–360 [discussing parallel construction of sex crime statutes]; see also Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3485 (1985–1986 Reg. Sess.) as amended June 30, 1986, p. 2 ["This bill would conform the criteria used to determine the commission of each of the four major sex offenses"]; Sen. Rules Com., Analysis of Assem. Bill No. 3485 (1985–1986 Reg. Sess.) as amended Aug. 20, 1986, p. 5 [bill's "author believes that the 'circumstantial criteria used to determine the commission of each of the four major sex offenses . . .' should be consistent."].) Lawmakers hoped that by standardizing the substantive elements of each offense, they could "reduce the potential for dismissal of cases containing circumstances inadvertently omitted from the definition of the specific crime." (Sen. Rules Com., *supra,* at p. 2.)

In light of this intent, the California Supreme Court recently construed four sex offense statutes—rape (§ 261), oral copulation (§ 288a), sodomy (§ 286), and object penetration (§ 289)—as reflecting a consistent legislative scheme despite their different language. The court explained: "*Substantively,* the provisions regarding the four major sex crimes parallel each other. The conduct and mental state of the perpetrator . . . that, when accompanying the acts . . . , transform these sexual acts into crimes are essentially identical." (*White, supra,* 2 Cal.5th at p. 357.) Though *White* did not specifically hold that section 289 applies to the other offenses, the opinion compels that result. (See also *People v. Harrison, supra,* 48 Cal.3d at pp. 327–334 [discussing penetration requirements in rape and sodomy statutes, both of which "relate to the same subject matter—unlawful penetrations of the genitals and anus"]; *People v. Quintana, supra,* 89 Cal.App.4th at pp. 1369 ["It would be anomalous and confusing if . . . 'sexual penetration' in section 289 meant something other than 'sexual penetration' in section 263, where those words first appeared."], 1370 [section 289 "*is* a form of rape, and there is no reason to distinguish the degrees of penetration required to commit different forms of this same crime."]; *People v. Romanowski* (2017) 2 Cal.5th 903, 914 [215

---

[6] Indeed, the bill was originally drafted to redefine rape to include vaginal penetration by any part of the human body or any foreign object. (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 1640 (1977–1978 Reg. Sess.) as introduced, p. 1.)

Cal.Rptr.3d 758, 391 P.3d 633] [definitional statute that "sets the ground rules for how theft crimes are adjudicated" applies to crimes "set out in a variety of other sections."].)

■ We therefore hold that the definition of sexual penetration in section 289 applies equally to the sexual penetration element of section 286.[7] Section 289 defines sexual penetration, in relevant part, as "the act of causing the penetration, however slight, of the . . . anal opening." (§ 289, subd. (k)(1).) Thus, the question before us is whether there is sufficient evidence that defendant's penis penetrated Ramirez's anal opening.[8]

### 1.3. *Anal opening*

■ Defendant contends he touched—but did not penetrate—Ramirez's anal opening.[9] But the distinction between touching and penetration depends on the meaning of *anal opening*—and contrary to defendant's implication, that term is not synonymous with *anus*, either anatomically or legally. For the reasons discussed below, we conclude forcible sodomy requires something more than penetration of the buttocks (see *State v. A.M.* (2011) 163 Wn.App. 414 [260 P.3d 229] [penetration of buttocks not sufficient]; *State v. Wells* (2001) 91 Ohio St.3d 32 [2001 Ohio 3, 740 N.E.2d 1097] [same]), but does not require penetration past the anal verge or into the anal canal.

### 1.3.1. *Plain meaning*

■ Unlike *sexual penetration*, the Penal Code does not define *anal opening*. The term's meaning, therefore, is a "question[] of statutory interpretation that we must consider de novo." (*People v. Prunty* (2015) 62 Cal.4th 59, 71 [192 Cal.Rptr.3d 309, 355 P.3d 480].) As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the lawmakers' intent. (*People v. Park* (2013) 56 Cal.4th 782, 796 [156 Cal.Rptr.3d 307, 299 P.3d 1263].) To determine intent, we first examine the statutory language and give the words their ordinary meaning. (*Ibid.*) "Words and phrases must be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have

---

[7] We express no opinion on whether section 289's intent requirement also applies to section 286.

[8] We note that CALCRIM No. 1030, the pattern jury instruction given in this case, defines sodomy as "any penetration, no matter how slight, of the anus of one person by the penis of another person." It does not address the *sexual penetration* element of the sodomy statute (§ 286). As neither party challenges this instruction, we do not address it. Nevertheless, we invite the Advisory Committee on Criminal Jury Instructions to consider revisions to CALCRIM No. 1030.

[9] Defendant also argues there is insufficient evidence that he used his penis to effect the penetration; we address that issue separately.

acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning." (§ 7, subd. (16); see *People v. Gonzales* (2017) 2 Cal.5th 858, 871 [216 Cal.Rptr.3d 285, 392 P.3d 437] [because term of art "must be understood as it is defined, not in its colloquial sense," courts must assume the Legislature knew the ramifications of its word choices].)

If statutory language is unambiguous, its plain meaning controls; if the statutory language is ambiguous, " ' "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." [Citation.] Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. [Citations.]' " (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321 [74 Cal.Rptr.3d 891, 180 P.3d 935].) We begin by examining the term's plain meaning.[10]

The anus contains two sections—a mucosa-lined anal canal at the top and an epidermis-lined perianal margin at the bottom. (Internat. Agency for Research on Cancer, World Health Organization Classification of Tumours: Pathology and Genetics of Tumours of the Digestive System (Aaltonen & Hamilton edits., 2000) Tumours of the Anal Canal, p. 147 (hereafter IARC).) At the top, the rectum connects the large intestine to the anal canal. (Taber's Cyclopedic Medical Dict. (16th ed. 1989) p. 1570.) At the bottom, the anal verge connects the end of the anal canal to the anal margin. (Mills, Histology for Pathologists (3d ed. 2007) ch. 27, p. 664 (hereafter Mills) ["The anal verge can be defined as the point (line) where the walls of the anal canal come in contact in their normal resting state."]; Cal. Governor's Off. of Emergency Services, Cal. Medical Protocol for Examination of Sexual Assault and Child Sexual Abuse Victims (2001) appen. M, p. 25 (hereafter OES, Medical Protocol) [defining *anal verge* as "the tissue overlying the subcutaneous external anal sphincter at the most distal portion of the anal canal (anoderm) and extends exteriorly to the margin of the anal skin."].)

"The anal margin begins approximately at the anal verge . . . . It represents the transition from the squamous mucosa to the epidermis-lined perianal skin,

---

[10] While courts can sometimes glean a term's meaning by resorting to the dictionary, dictionaries are of limited use here. *Anal opening* appears to be a legislative invention, and as such, has not been defined by lexicographers. As for the term's constituent parts, the Oxford English Dictionary, for example, defines *anal* as "the excretory opening of the digestive tract" (Oxford English Dict. Online (2017) <http://www.oed.com/view/Entry/6994?redirected From=anal#eid> [as of Apr. 14, 2017]); it defines *opening* as an "aperture in the body; a bodily orifice" (Oxford English Dict. Online (2017) <http://www.oed.com/view/Entry/131716?rskey= j3EqQ8&result=1#eid> [as of Apr. 14, 2017]). While these definitions provide a general location, they do not tell us where the opening begins and ends, and do not help us ascertain what, exactly, needs to be penetrated.

and extends to the perianal skin." (Ryan & Willett (2011) Classification and Epidemiology of Anal Cancer, figure 1.) The outer "boundary [of the anal margin] is indistinct . . . , and anatomically," its location varies by person. (American Joint Committee on Cancer, Cancer Staging Manual (6th ed. 2002) ch. 13, p. 125.)

"The perianal skin (the anal margin) is defined by the appearance of skin appendages." (IARC, *supra*, at p. 147; see Mills, *supra*, at p. 670 ["At the lower border of the anal canal, the dull, wrinkled perianal skin with hair follicles is obvious"].) However, the "perianal region is not well defined" (Mills, *supra*, at p. 667), and "[t]here exists no generally accepted definition of its outer limit." (IARC, *supra*, at p. 147; see OES, Medical Protocol, *supra*, appen. M, at p. 27 [defining *perianal skin folds* as "[w]rinkles or folds of the perianal skin radiating from the anus, which are created by the contraction of the external anal sphincter."].) Indeed, "much confusion continues about definitions and nomenclature" of these structures generally. (Mills, *supra*, p. 664; see, e.g., *id.* at p. 665 ["It would seem natural to start with a definition of the anal canal; but, because there are several definitions and new terms are still introduced, a description of the anatomical landmarks and epithelial zones may be the best introduction to this never-ending discussion."]; Rociu et al., *Normal Anal Sphincter Anatomy and Age- and Sex-related Variations at High-Spatial-Resolution Endoanal MR Imaging* (2000) 217 Radiology 395–401, 399 ["There have been many contradictory and often confusing theories of the anatomy of this region."].) It appears, therefore, that the terms anal verge, anal margin, perianal area, perianal folds, and perianal skin all describe at least part of the anal opening—the outer boundary of the anus.

Given that medical professionals cannot agree on what to call the areas between the rectum and the buttocks, it is not surprising that the courts—which until recently referred to sodomy in wholly euphemistic terms—have struggled as well. (See, e.g., *People v. Gann* (1968) 259 Cal.App.2d 706, 710 [66 Cal.Rptr. 508] ["On account of the degrading nature of the crime of sodomy it is uniformly held that it is not necessary to describe the offense with the same particularity which is required in other crimes."], 712 ["the commonly understood meaning of the euphemism, 'infamous crime against nature,' in section 286 of the Penal Code, is sufficiently definite to apprise the public generally of the conduct which is prohibited thereby, *sic*, copulation per anum"].)

In light of this terminological confusion, we conclude that *anal opening* lacks a sufficiently plain meaning to end our inquiry. We therefore turn to other forms of statutory interpretation.

### 1.3.2. *Construction with related statutes*

■ While we look first at the words of a statute, we do not consider statutory language in isolation; rather, we read the statute "as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) We construe all parts of a statute together, without according undue importance to a single or isolated portion. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228 [127 Cal.Rptr.2d 177, 57 P.3d 654].) Where statutes are inconsistent, we attempt to provide a harmonious interpretation and give effect to every provision, so that one code section does not destroy another. (*People v. Jenkins, supra*, at p. 246; see 2A Sutherland, Statutory Construction (7th ed., rev. Apr. 2014) § 46:6, pp. 238–252.) Thus, a " 'word or phrase will be given the same meaning each time it appears in a statute . . . .' " (*Cooley v. Superior Court, supra*, at p. 255.)

■ As discussed, the Penal Code defines sodomy as "sexual conduct consisting of contact between the penis of one person and the anus of another person. Any sexual penetration, however slight, is sufficient to complete the crime of sodomy." (§ 286, subd. (a).) *Sexual penetration*, in turn, is penetration of the anal opening. (§ 289, subd. (k)(1).) Taken together, the crime of sodomy requires the perpetrator to penetrate the anal opening *and* to make contact with the anus. To give effect to both requirements, the anus must lie somewhere beyond the anal opening.[11]

Moreover, such a construction avoids surplusage and harmonizes the *sexual penetration* element of sodomy and object penetration with the anal contact element of sodomy and oral copulation. (See *White, supra*, 2 Cal.5th at p. 357 [substantive elements of rape, sodomy, oral copulation, and object penetration are the same].) "Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person." (§ 288a, subd. (a).) " '[A]ny contact, however slight, between the mouth of one person and the sexual organ [or anus] of another person constitutes oral copulation.' " (*People v. Dement* (2011) 53 Cal.4th 1, 41–42 [133 Cal.Rptr.3d 496, 264 P.3d 292], abrogated on other grounds by *People v. Rangel* (2016) 62

---

[11] The presence of **both** requirements differentiates California's sodomy statute from laws in other states that refer to *either* penetration of the anal opening *or* contact with the anus, but not both. (See, e.g., *Watkins v. State* (Fla.Dist.Ct.App. 2010) 48 So.3d 883, 884 [evidence the victim placed her tongue "on" the defendant's anus was insufficient to establish slight penetration of the anus]; *Richards v. State* (Fla.Dist.Ct.App. 1999) 738 So.2d 415, 418 [in statute phrased in the alternative, "union" requires "contact with the relevant portion of anatomy, whereas penetration requires some entry into the relevant part, however slight."]; *State v. Gallagher* (1995) 286 N.J. Super. 1 [668 A.2d 55, 61] ["anal intercourse" requires insertion "into the anus"; touching insufficient].)

Cal.4th 1192, 1216 [200 Cal.Rptr.3d 265, 367 P.3d 649].) Thus, contact with the anus does not require penetration. (*Dement*, at pp. 41–44.)

This construction also harmonizes the elements of sodomy, object penetration, and oral copulation with the *sexual intercourse* element of rape. (§ 261, subd. (a) [defining rape as nonconsensual "sexual intercourse."].) While section 263 provides that sexual intercourse requires penetration, the Penal Code does not specify what has to be penetrated for sexual intercourse to occur. The Supreme Court has described the requirement as "vaginal penetration," but has never held that section 261 requires vaginal penetration as it is commonly understood. (*People v. Stitely* (2005) 35 Cal.4th 514, 554–555 [26 Cal.Rptr.3d 1, 108 P.3d 182].)

That point bears emphasis because, notwithstanding the term's apparently plain meaning, appellate courts have long held that vaginal penetration does *not* require penetration of the vagina. (*People v. Karsai* (1982) 131 Cal.App.3d 224, 232 [182 Cal.Rptr. 406] (*Karsai*).) Rather, "[p]enetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina." (*Ibid.* [victim's testimony that defendant pushed his penis between the "lips" of her vagina was sufficient to support rape conviction]; see also *People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097 [141 Cal.Rptr.3d 193] [relying on *Karsai*, sexual intercourse required proof of "penetration of [the victim's] labia majora, not her vagina"].) In short, although the term *vagina* has a well-established anatomical meaning, California courts have long treated it as a term of art synonymous with "female private parts." (See, e.g., *People v. Coleman* (1942) 53 Cal.App.2d 18, 26 [127 P.2d 309] [sufficient evidence defendant used his "private parts" to penetrate victim's "private parts"].)[12]

The "essential guilt" of both rape and forcible sodomy "consists in the outrage to the person and feelings of the victim." (§ 263.) Consequently, courts are inclined to take a broad view of genital boundaries. As noted above, it appears the perianal folds, which radiate from the anus, comprise the outer boundary of the anus (OES, Medical Protocol, *supra*, appen. M, at p. 27); thus, the outer edge of the perianal area forms the edge of the anal opening. Even if the perianal area merely *adjoins* the anal opening, however,

---

[12] *Karsai* was disapproved on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8 [250 Cal.Rptr. 635, 758 P.2d 1165], but remains good law on this point. Fifteen years after *Karsai* held that the "penetration which is required is sexual penetration and not vaginal penetration" (*Karsai, supra*, 131 Cal.App.3d at p. 232), the California Supreme Court began referring to rape's sexual intercourse element as "vaginal penetration." (*People v. Holt* (1997) 15 Cal.4th 619, 675–676 [63 Cal.Rptr.2d 782, 937 P.2d 213].) While that language casts some doubt on *Karsai*'s continued validity, the Supreme Court has never explained what it means by this term, and appellate courts continue to rely on *Karsai*.

statutory consistency—particularly among the "four major sex crimes"—compels the same conclusion. (See *White, supra*, 2 Cal.5th at p. 359 [statutes "for which the concept of penetration is relevant contain similar provisions regarding the extent of the required penetration. [Citations]."].) The perianal area is undoubtedly part of the external anal structure—just as the labia, though not part of the vagina, are undoubtedly part of the external female genitalia. Both areas are part of a victim's "private parts." We see no reason to adopt different penetration rules for the anus and the vagina.[13]

■ We therefore hold that sexual penetration requires penetration of the tissues that surround and encompass the lower border of the anal canal—that is, it requires penetration past the buttocks and into the perianal area but does not require penetration beyond the perianal folds or anal margin.

We emphasize, however, that mere penetration of the buttocks is **not** sufficient to establish penetration of the anal opening. "An intrusion into the space between a person's buttocks, while perhaps a necessary step on the path to intrusion of the anal opening, is not, in itself, an intrusion into the anal opening." (*In re B.H.* (R.I. 2016) 138 A.3d 774, 782 & fn. 9 [citing cases]; see *Downey v. State* (Ind.Ct.App. 2000) 726 N.E.2d 794, 797 ["Despite their proximity, the buttocks and anus are not the same, and an inference that contact with the buttocks necessarily includes contact with the anus cannot be made beyond a reasonable doubt" absent other evidence].)

In all sex-crime cases requiring penetration, prosecutors must elicit precise and specific testimony to prove the required penetration beyond a reasonable doubt. (See, e.g., *State v. Pullman* (2013) 2013 UT App 168 [306 P.3d 827, 833] ["Sex crimes are defined with great specificity and require concomitant specificity of proof."].) We caution prosecutors not to use vague, euphemistic language and to ask followup questions where necessary.[14]

---

[13] We are mindful that while California courts only require penetration of the external genitalia, other states require additional penetration. For example, when construing *anal cavity*, the Ohio Supreme Court concluded that *cavity* refers to a space inside the body, and that *anal cavity* refers to the lower portion of the alimentary canal. Thus, Ohio law required penetration of an *inner* genital structure. (*State v. Wells, supra*, 740 N.E.2d at p. 1099.) Since California law, unlike Ohio law, does not require penetration of the anal cavity, our statute does not carry the same connotation.

[14] For example, the prosecutor in this case asked the forensic nurse examiner about injuries to Ramirez's "anal area" and "vaginal area," injuries he encouraged the nurse to describe "in laymen's terms." As we will discuss, the nurse's detailed, precise testimony—provided despite the prosecutor's efforts to limit her to generalities—was the critical evidence of penetration in this case.

1.4. *There was sufficient evidence defendant penetrated Ramirez's anal opening with his penis.*

Having determined the type of sexual penetration section 286 requires, we turn to the question before us—is the evidence sufficient to support the verdict?

In assessing the sufficiency of the evidence, we review the entire record to determine whether *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 [75 Cal.Rptr.3d 289, 181 P.3d 105].) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Ibid.*)

In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) The same standard applies where the conviction rests primarily on circumstantial evidence. (*People v. Thompson* (2010) 49 Cal.4th 79, 113 [109 Cal.Rptr.3d 549, 231 P.3d 289].) We may not reweigh the evidence or resolve evidentiary conflicts. (*People v. Young* (2005) 34 Cal.4th 1149, 1181 [24 Cal.Rptr.3d 112, 105 P.3d 487].) Accordingly, we may not reverse for insufficient evidence unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

Ramirez testified as follows:

"Q. And did part of his body touch you?

"A. Yes.

"Q. What part of his body?

"A. His penis.

"Q. What part of your body did he touch with his penis?

"A. Behind me.

"Q. Okay. When you say behind you, are you referencing a specific part of your body?

"A. Yes. He started having anal sex with me."

The prosecutor also asked Ramirez, "Was he moving his body in and out of yours?" She responded, "Yes." Ramirez explained that the act caused her pain. Urena, the forensic nurse examiner, testified that she discovered two tears or lacerations located across from each other in Ramirez's perianal folds. The injuries were caused by some sort of blunt force.

█ In *People v. Gonzalez*, the court found that the victim's testimony that the defendant " 'tried to enter a little bit, but it hurt a lot' " supported a finding of slight penetration, which when combined with circumstantial evidence of rectal pain and bleeding, was sufficient to sustain the sodomy conviction. (*People v. Gonzalez* (1983) 141 Cal.App.3d 786, 790 [190 Cal.Rptr. 554].) Here, we conclude the blunt-force injuries to the top and bottom of Ramirez's perianal folds, when combined with her testimony that defendant " 'started having anal sex' " with her and her agreement that he moved " 'his body in and out' " of hers, were sufficient to prove the slight penetration required under section 286.

Defendant argues in the alternative that Ramirez's "testimony at best established only the possibility of penile penetration, with digital penetration being just as likely, since [defendant] was behind [Ramirez]. There was no testimony that [Ramirez] saw [defendant's] penis, or saw [his] penis penetrate her anus." Thus, defendant speculates, Ramirez's pain—and, presumably, the injuries to the perianal folds—may have been caused by something other than defendant's penis.

Defendant misunderstands the relevant standard of review. " 'Substantial evidence' " is a " 'deferential' standard." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 [63 Cal.Rptr.3d 82, 162 P.3d 596].) As we have explained, the "inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question. Once such evidence is found, the substantial evidence test is satisfied. [Citation.] Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*Ibid.*)

Ramirez testified that defendant touched her body "behind" with his penis, that this meant he " 'started having anal sex' " with her, that he moved his body in and out of her body, and that it caused her pain. The jury could reasonably infer from this testimony that Ramirez believed that defendant

penetrated her with his penis rather than with anything else; absent an objection, the jury was entitled to credit that opinion.[15]

We conclude the evidence was sufficient to support defendant's conviction for count 5.

2.–5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified to vacate the portion of the sentence imposed under Penal Code section 667.61, subdivisions (a) and (e), and to clarify that sentence was imposed under subdivisions (a) and (d) only. There is no change to the term of imprisonment. As modified, the judgment is affirmed.

Upon issuance of the remittitur, the court is directed to correct the abstract of judgment (page 1, item 8) to reflect that defendant was sentenced under Penal Code section 667.61 and to send a corrected abstract of judgment to the Department of Corrections and Rehabilitation.

Aldrich, Acting P. J., and Goswami, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied July 19, 2017, S242085.

---

[15] For example, the defense did not object that this testimony was an improper subject of lay opinion testimony. (See Evid. Code, § 800.)

*See footnote, *ante*, page 1023.

†Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.